**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK** 07 CV 2781

**SAILA SULTANA,**

Plaintiff,

vs.

**BLOCKBUSTER INC.,**

Defendant.

**COMPLAINT WITH JURY DEMAND**

Case No. ECF

APR 0 5 2007

## NATURE OF THE CASE

1.     This is an action arising under The Family Medical Leave Act of 1993, *29 U.S.C. §§2601 et seq.* ("FMLA"), and the New York City Administrative Code seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff Saila Sultana suffered as a result of being discriminated against by Defendant Blockbuster Inc. on the basis of her national origin, race, color and creed, and in retaliation for complaining about discrimination, and for actions taken against her in violation of the FMLA.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction pursuant to *29 U.S.C.§ 2617, 28 U.S.C. § 1331,* and pendent jurisdiction thereto.

3.     Venue is proper in the Southern District of New York based upon employment actions occurring within the Southern District of New York.

## PARTIES

4.     Plaintiff Saila Sultana (hereinafter also described as "Plaintiff" and/or "Sultana") is a female resident alien of the United States and was a resident of the State of New York during the relevant time period.

5.     Defendant Blockbuster Inc. (hereinafter also described as "Defendant" and/or "Blockbuster") is an "employer" as defined in 29 U.S.C. § 2611 (4)(A), that employs 50 or more persons and is engaged in an industry affecting commerce.

## MATERIAL FACTS

6.     Plaintiff Saila Sultana is a female of Bangladesh national origin, and of the Islamic religion. On or about April 6, 2002, Sultana was hired by Blockbuster as an Assistant Manager. Plaintiff's performance was at all times outstanding.

7.     Due to Plaintiff's hard work and exemplary performance, she was promoted to the position of Store Manager in or about February/March 2003.

8.     In or about the summer of 2003, Plaintiff was temporarily assigned as a Store Manager in Training to a Blockbuster store on 9th Avenue and Broadway in Manhattan for

2

training purposes. While at that location, she was subjected to discriminatory comments about her national origin. Plaintiff complained to Blockbuster's Human Resources office, yet her protected complaints were never properly investigated.

9.      Shortly thereafter, in or about August 2003, Plaintiff was assigned to the position of Store Manager at the Blockbuster store at 3295 Amboy Road, located in Staten Island, New York. After her assignment to this location, she was subjected to numerous comments of a derogatory and discriminatory nature concerning her race, skin color and national origin by management personnel, including her supervisor, District Leader Steven Giurici.

10.     Discriminatory comments by Giurici were made to Sultana throughout her employment with Defendant, commencing in August 2003. These comments included, but were not limited to the following.

11.     When Sultana commenced working at the Staten Island location, Giurici told her that she was working in an area of Staten Island that was populated primarily by persons with white skin color. Giurici indicated to Plaintiff that if she wanted to work in that area she should change her dark skin color. He also marginalized Sultana by indicating that she should not continue to work at that location; and that she should be working in Harlem as a result of her skin color.

3

12.     Giurici subsequently threatened to have Plaintiff terminated if she would not accept a demotion to a lower position along with the transfer to a Harlem location.

13.     As a native of Bangladesh, Plaintiff Sultana wore a nose pin because she was engaged to be married. A nose pin in Bangladesh and Islamic culture in general is the equivalent of persons in the United States wearing an engagement ring.

14.     Giurici demanded that Plaintiff Sultana remove her nose pin, even though she had previously received approval for its use from Blockbuster's Human Resource Department and other management personnel, having explained the pin's cultural significance.

15.     Giurici also asked Plaintiff Sultana if she felt different from her colleagues attending Blockbuster company meetings because of Plaintiff's dark skin color. He threatened that he would not allow Plaintiff to miss required Blockbuster company meetings because he said people would not be able to understand her accent.

16.     Giurici told Plaintiff that if she wanted to keep her job she should change her name because the customers could not pronounce it. On occasion, when Plaintiff Sultana asked about certain company procedures, Giurici responded by saying such procedures "white" rules, referring disparagingly to Plaintiff's race. Giurici also emphasized to Plaintiff that she, a non-Caucasian, was working for Caucasian managers.

4

17.    In or about November 14, 2003, Giurici arrived at the Staten Island store Plaintiff was managing and advised her if she didn't immediately remove her nose pin, he would terminate her immediately. Plaintiff Sultana complied with this threatening directive. Giurici then told Plaintiff he would give her until the following Monday to step down from her store manger position and transfer to a Harlem store, or she would be terminated.

18.    Giurici further told Plaintiff that if she complained to Blockbuster Human Resources about his own conduct, no remedial action would be taken because Human Resources approved of his decision to compel her to remove her engagement pin. He advised her that if she complained to Blockbuster's regional office she would be terminated.

19.    Thereafter, Plaintiff called a "hotline" HR telephone number that Blockbuster provides to employees to report instances of discrimination. Plaintiff notified a hotline staff person of the discriminatory conduct and animus to which she had been subjected.

20.    The following Monday, November 17, 2003, after Plaintiff Sultana arrived at work, Giurici telephoned her and asked her what her decision was regarding the choice between acceptance of a "voluntary" demotion and transfer to a minority neighborhood Blockbuster store, or being summarily terminated. Plaintiff indicated that she would not relinquish her current position that she was eminently qualified to hold.

5

21.    Giurici told Plaintiff that she would be fired from Blockbuster regardless of how hard she worked or how many hours she devoted to her job. On the same day, November, 17, 2003, Giurici visited Plaintiff at work and gave her a written "Action Plan" that gave her thirty days to "improve" or she would be terminated.

22.    In addition, that same day Giurici gave Plaintiff a "final warning" disciplinary action plan which also threatened her with termination. He advised Plaintiff that he may return within the week to terminate her.

23.    On or about November 19, 2003, Matthew Argano, Blockbuster Regional Human Resource Manager for the New York Region, who was based in Manhattan, visited Plaintiff in the Staten Island Store. He was accompanied by Steven Leach, Blockbuster New York Regional Loss Prevention Manager.

24.    Argano summoned Plaintiff into an office where he accused her of being related by blood to another Blockbuster manager, ostensibly a violation of Blockbuster rules. Plaintiff was not related to any other Blockbuster manager.

25.    During that meeting, Plaintiff Sultana told Argano about the discriminatory conduct that she had been subjected to by Giurici. In a retaliatory response, Argano then aggressively questioned her regarding her call to Blockbuster's hotline to complain about discrimination. Argano asserted that Plaintiff was manufacturing claims of discriminatory conduct by Giurici. The entire interrogation was hostile, recriminatory and retaliatory.

6

26.     Argano interrogated Sultana for more than four hours and claimed he was recording the conversation. At the conclusion of this meeting, Argano specifically told Plaintiff not to talk to anyone about his discussion with her.

27.     On or about November 21, 2003, Argano and Leach returned to Plaintiff's store. During a meeting with Plaintiff, Argano told her that Giurici enjoyed a fine reputation at Blockbuster, that he would not be terminated, and that he would remain the District Leader in Staten Island.

28.     Argano advised Plaintiff that she could transfer to a Manhattan Blockbuster store or stay at that particular Staten Island store. He indicated that Tina Reynolds, Giurici's direct subordinate, would supervise her.

29.     Plaintiff complained about Argano's inaction concerning her complaints of discrimination. Argano replied that there was no reason for him to take any action against Giurici. Argano further stated that Giurici had been employed with Blockbuster for a lengthy period of time and Blockbuster did not want to lose his services.

30.     In a clear discriminatory and retaliatory action, Argano said that Giurici was correct about the thirty day action plan that would be issued to Plaintiff. Argano specifically stated that if Plaintiff did not meet the requirements of that thirty day action plan she would be terminated.

7

31.     Argano also said that Plaintiff should forget the discriminatory conduct to which Girurici had subjected her. Argano then advised that Giurici was planning to hire a lawyer to sue her, and that Plaintiff could be arrested for these complaints.

32.     On or about December 1, 2003, Argano, Tina Reynolds and Javier Garcia, Blockbuster Regional Operations Manager, met with Plaintiff in the workplace.

33.     During that meeting, Argano, in a discriminatory and retaliatory act, gave Plaintiff the thirty day action plan that threatened her with termination.

34.     Thereafter, in December 2003, Blockbuster management continued to subject Plaintiff to discriminatory and retaliatory actions, including but not limited to, discriminatory comments made by Tina Reynolds.

35.     Also, while working at Blockbuster, Plaintiff was enrolled as a student at the John Jay College of Criminal Justice. She gave Tina Reynolds, her Blockbuster supervisor in Staten Island, three weeks notice of a final exam scheduled for December 23, 2003.

36.     However, on or about December 23, 2003, Reynolds telephoned Plaintiff and told her that she was required to work at Blockbuster during the time period of her final exams. Plaintiff reminded Reynolds that she was scheduled to take her final exam, but Reynolds insisted that she report to work instead, another clear retaliatory act.

8

37.     In yet a further act of discrimination and retaliation, Reynolds indicated that there was no reason for Plaintiff to go school, as persons of Plaintiff's national origin and/or perceived national origin would always be subordinate to Caucasians.

38.     Because Blockbuster refused to provide accommodations for Plaintiff's education, she was forced to drop several classes. In addition, she lost several hundred dollars in tuition, because it was too late in the year to receive reimbursements for the classes that Ms. Reynolds prevented her from completing.

39.     In or about December 2003, Plaintiff filed charges of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). In or about that time, Blockbuster was notified about this EEOC charge.

40.     On or about January 1, 2004, Plaintiff undertook took a Family and Medical Leave Act leave of absence in order to care for her sick father. In fact, Blockbuster had approved this FMLA leave between January 1, 2004 and February 19, 2004.

41.     On or about January 2, 2004, Plaintiff received a call from Tina Reynolds. During that call, Ms. Reynolds told Plaintiff that she had been terminated.

42.     Later that day, Plaintiff received a second phone call from Ms. Reynolds in which she stated that Plaintiff's termination had been rescinded.

9

43.    In or about early January 2004, Tina Reynolds instructed Plaintiff to return to work. Plaintiff Sultana informed Ms. Reynolds that she had already commenced FMLA leave. Ms. Reynolds further indicated to Ms. Sultana that Giurici had told Ms. Reynolds to instruct Ms. Sultana to return. Ms. Sultana did then work for one day in January as per Ms. Reynolds' and Giurici's demand.

44.    In or about January and February of 2004, Plaintiff Sultana was out on Family and Medical Leave while she cared for her father.

45.    On or about February 16, 2004, Plaintiff contacted Blockbuster to find out when she would be able to return to work.  Tracy Malach, a local Blockbuster administrator in New York, informed Plaintiff that Blockbuster could not reinstate her employment and that there were no open positions that she could fill.

46.    Subsequently, upon information and belief, Plaintiff's personnel file was transferred to the Dallas, Texas office of Stephen Mills, Manager of Blockbuster Corporate Human Resources.

47.    On or about February 27, 2004, Plaintiff Sultana telephoned an individual at Blockbuster known to Plaintiff only as "Ms. Bertha," Stephen Mills' secretary, to inquire again about returning to work. Ms. Bertha told Plaintiff that she would have to wait, and that she would return her call with an answer in due course.

10

48.   Ms. Bertha additionally stated that Plaintiff's disciplinary action plan would still be in effect upon her return to work. The action plan to which Ms. Bertha referred was issued on December 1, 2003, and was itself a discriminatory and retaliatory action against Plaintiff, as described above.

49.   In addition, the December 1, 2003 adverse employment action as embodied in the "action plan" was a thirty-day warning notice, and it was scheduled to expire at the end of 2003. Ms. Bertha's statement that the disciplinary action plan would continue was yet another discriminatory and retaliatory action against Plaintiff Sultana.

50.   This action was taken by Blockbuster's Corporate Human Resources office, who had received actual notification of Plaintiff Sultana's December 2003 Charge of Discrimination against Blockbuster.

51.   Between February 27, 2004 and April 7, 2004, Plaintiff was not contacted by Ms. Bertha or given any information regarding her return to work. On or about April 7, 2004, Ms. Bertha telephoned Plaintiff and advised her that a meeting was scheduled between her and William Rolack, a Blockbuster Human Resources Manager.

52.   Ms. Bertha additionally stated that Plaintiff would be given a new job assignment at the meeting, and would be able to return to work shortly thereafter. Ms. Bertha said that the meeting, scheduled for 9:00 a.m. on April 9, 2004, was to take place at a Holiday Inn at Rockville Centre in Long Island, New York.

11

53.   On or about April 9, 2004 at approximately 9:00 am, Plaintiff arrived at the Rockville Centre Holiday Inn for her meeting with Mr. Rolack, who arrived approximately two hours late, along with "Meghan" last name unknown, a Blockbuster Loss Prevention Manager.

54.   Immediately after his arrival, Mr. Rolack told Plaintiff that she was terminated. He indicated that, as Blockbuster prepared to transfer her to a store location in Queens, New York, they discovered information in her original job application that rose to the level of a firing offense, namely, that Plaintiff allegedly provided a false reference in her job application.

55.   During this termination meeting, Mr. Rolack made no mention of any previous disciplinary action plan or failure to meet a Blockbuster sales quota.

56.   The above-mentioned Queens, New York Blockbuster location was where Plaintiff originally commenced her employment with Blockbuster, after providing a job application in or about the spring of 2002. Since the inception of Plaintiff's employment at Blockbuster, she was transferred at least three times. Previously, no issues with respect to the integrity of her job application ever arose.

57.   As indicated above, Mr. Rolack stated that Plaintiff provided a false reference on her job application, but when she asked him what the false reference was, he refused to divulge this information. Mr. Rolack indicated he only served as the messenger for the

12

termination decision, and that he was given directions to terminate her by Mr. Mills, the Corporate Human Resources Manager.

58.     After Plaintiff's termination and after she applied for unemployment insurance benefits, she received a Notice of Determination from the New York State Department of Labor stating that her unemployment benefits were being suspended due to Blockbuster's contention that Plaintiff's alleged statement on her initial job application that she worked at Rite Aid for two years was false. Blockbuster contended she had actually worked at Rite Aid for two months.

59.     Plaintiff did indeed work at Rite Aid for two years as she indicated on her Blockbuster job application. Also, prior to Plaintiff's filing of her December 2003 EEOC Charge of Discrimination against Blockbuster, there had never been an articulated problem with the information provided on her job application. Blockbuster's termination of Plaintiff Sultana therefore, was based on pure pretext, and was in fact clearly a discriminatory action and in retaliation for her complaints of discrimination.

60.     On or about May 25, 2004, in another discriminatory and retaliatory act, Blockbuster contested Plaintiff's application for unemployment benefits by informing the New York State Department of Labor that Plaintiff had been fired for misconduct.

13

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE FMLA

61.     Plaintiff repeats, reiterates and reasserts all allegations contained in

paragraphs 1 through 60 of this Complaint as if fully set forth herein at length.

62.     The Family and Medical Leave Act of 1993, 29 U.S.C. §2615 (a) provides

that it shall be unlawful for an employer:

> "to interfere with, restrain, or deny the exercise of or the
> attempt to exercise, any right provided under this subchapter."

63.     Defendant Blockbuster willfully interfered with and denied Plaintiff Saila

Sultana's exercise of her rights under this title, 29 U.S.C. §2601 *et seq.*, when Blockbuster

discriminated against and retaliated against Plaintiff Sultana by interfering with her leave,

failing to reinstate her and terminating her employment because she had taken medical

leave protected by and provided for under the FMLA.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

64.     Plaintiff repeats, reiterates and reasserts all allegations contained in

paragraphs 1 through 63 of this Complaint as if fully set forth herein at length.

65.     The New York City Administrative Code Title 8, *§8-107(1)(a)* provides that

it shall be an unlawful discriminatory practice:

14

> "For an employer . . . because of...national origin . . . to
> discharge from employment such person or to discriminate
> against such person..."

66.     Defendant Blockbuster engaged in an unlawful discriminatory practice in

violation of New York City Administrative Code Title 8, *§8-107(1)(a)* by discriminating

against Plaintiff and discharging Plaintiff based upon her national origin.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

67.     Plaintiff repeats, reiterates and reasserts all allegations contained in

paragraphs 1 through 66 of this Complaint as if fully set forth herein at length.

68.     The New York City Administrative Code Title 8, *§8-107(1)(a)* provides that

it shall be an unlawful discriminatory practice:

> "For an employer . . . because of...race . . . to discharge
> from employment such person or to discriminate against such
> person..."

69.     Defendant Blockbuster engaged in an unlawful discriminatory practice in

violation of New York City Administrative Code Title 8, *§8-107(1)(a)* by discriminating

against Plaintiff and discharging Plaintiff based upon her race.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

70.     Plaintiff repeats, reiterates and reasserts all allegations contained in

15

paragraphs 1 through 69 of this Complaint as if fully set forth herein at length.

71.     The New York City Administrative Code Title 8, *§8-107(1)(a)* provides that

it shall be an unlawful discriminatory practice:

> "For an employer . . . because of...color . . . to discharge
> from employment such person or to discriminate against such
> person..."

72.     Defendant Blockbuster engaged in an unlawful discriminatory practice in

violation of New York City Administrative Code Title 8, *§8-107(1)(a)* by discriminating

against Plaintiff and discharging Plaintiff based upon her color.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

73.     Plaintiff repeats, reiterates and reasserts all allegations contained in

paragraphs 1 through 72 of this Complaint as if fully set forth herein at length.

74.     The New York City Administrative Code Title 8, *§8-107(1)(a)* provides that

it shall be an unlawful discriminatory practice:

> "For an employer . . . because of...creed . . . to discharge
> from employment such person or to discriminate against such
> person..."

16

75.    Defendant Blockbuster engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff and discharging Plaintiff based upon her creed.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

76.    Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 75 of this Complaint as if fully set forth herein at length.

77.    The New York City Administrative Code Title 8, §8-107(3) provides that it shall be an unlawful discriminatory practice:

> "For an employer . ..to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate or forego a practice of, his or her creed or religion..."

78.    Defendant Blockbuster engaged in an unlawful discriminatory practice in violation of New terms York City Administrative Code Title 8, §8-107(3) by imposing upon Plaintiff a condition of obtaining or retaining employment and conditions which required Plaintiff to forego a practice of her creed.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

79.    Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 78 of this Complaint as if fully set forth herein at length.

17

80.     The New York City Administrative Code Title 8, *§8-107(19)* provides that it

shall be an unlawful discriminatory practice:

> "For any person to coerce, intimidate, threaten or interfere
> with, or attempt to coerce, intimidate, threaten or interfere
> with, any person in the exercise or enjoyment of...any right
> granted or protected pursuant to this section."

81.     Defendant engaged in an unlawful discriminatory practice in violation of

New York City Administrative Code, Title 8, *§8-107(19)* by coercing, intimidating,

threatening and interfering with and attempting to coerce, intimidate, threaten and

interfere with Plaintiff's exercise and enjoyment of her rights granted and protected

pursuant to this section.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY LAW

82.     Plaintiff repeats, reiterates and reasserts all allegations contained in

paragraphs 1 through 81 of this Complaint as if fully set forth herein at length.

83.     The New York City Administrative Code Title 8, *§8-107(7)* provides that it

shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this chapter
> applies to retaliate or discriminate in any manner against any
> person because such person has (I) opposed any practice
> forbidden under this chapter..."

18

84.    Defendant Blockbuster engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, *§8-107(7)* by discriminating against Plaintiff and discharging Plaintiff, and retaliating against Plaintiff because she complained about discriminatory employment practices.

## INJURY AND DAMAGES

85.    As a result of the Defendant's unlawful discriminatory employment practices, Plaintiff Sultana has suffered injury to her reputation and has experienced mental and emotional distress, and pain and suffering.

## REMEDY

**WHEREFORE**, Plaintiff Sultana request a judgment against the Defendant Blockbuster:

A.    Declaring that Defendant engaged in an unlawful employment practice prohibited by The Family Medical Leave Act of 1993, *29 U.S.C. §§2601 et. seq.*, and the New York City Administrative Code Title 8 §8-107 et. seq. by terminating or otherwise discriminating against and retaliating against Plaintiff Saila Sultana.

19

B.  Reinstating Plaintiff Saila Sultana to her former job and/or awarding future income to the Plaintiff Saila Sultana in an amount to be proven representing all loss of future earnings, including reasonable and expected increases, loss of retirement income and all other benefits she would have expected to earn during her entire lifetime had it not been for Defendant's unlawful discharge of her employment;

C.  Awarding damages to the Plaintiff Saila Sultana for back pay and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiff Saila Sultana compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven at trial;

E.  Awarding Plaintiff Saila Sultana punitive damages;

F.  Awarding Plaintiff Saila Sultana attorneys' fees, costs and expenses incurred in the prosecution of the action;

20

G.  Awarding Plaintiff Saila Sultana double damages under 29 U.S.A. §626(b) for violating the FMLA;

H.  Awarding Plaintiff Saila Sultana such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:     New York, New York
           April 5, 2007

By: _____

William J. Sipser (WS 1781)
Tuckner, Sipser, Weinstock & Sipser, LLP
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, NY 10271
212.766.9100